**NOT YET SCHEDULED FOR ORAL ARGUMENT**
**No. 13-7066**

---

# United States Court of Appeals
*for the*
# District of Columbia Circuit

---

DIRECT SUPPLY, INC.,

*Plaintiff-Appellee*,

v.

SPECIALTY HOSPITALS OF AMERICA, LLC
and SPECIALTY HOSPITALS OF WASHINGTON, LLC

*Defendants-Appellants*,

NOT-FOR-PROFIT HOSPITAL CORPORATION

*Defendant-Appellee*.

---

*On Appeal from the United States District Court for the District of Columbia*
*in Case No. 1:11-CV-00683 (Hon. James S. Gwin, sitting by designation)*

---

## BRIEF OF DEFENDANT-APPELLEE
## NOT-FOR-PROFIT HOSPITAL CORPORATION

---

Emil Hirsch (D.C. Cir. Bar No. 27225)
Steven A. Pozefsky (D.C. Cir. Bar No. 52345)
BRADLEY ARANT BOULT CUMMINGS, LLP
1615 L Street, NW, Suite 1350
Washington, DC  20036
(202) 393-7150 (tel.)
(202) 347-1684 (fax)
*Attorneys for Defendant-Appellee*
*Not-For-Profit Hospital Corporation*

## CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES

Defendant-Appellee Not-For-Profit Hospital Corporation ("NFP"), by and through undersigned counsel, files its Certificate as to Parties, Rulings and Related Cases and state as follows:

### I.    Parties

The following parties appeared before the District Court:

1. Plaintiff-Appellee Direct Supply, Inc.

2. Defendant-Appellant Specialty Hospitals of America, LLC

3. Defendant-Appellant Specialty Hospitals of Washington, LLC

4. Defendant-Appellee Not-For-Profit Hospital Corporation

### II.    Rulings

Appellants Specialty Hospitals of America, LLC ("SHA") and Specialty Hospitals of Washington, LLC ("SHW") (collectively "Appellants"), are appealing the March 27, 2013 Opinion and Order (the "March 2013 Opinion and Order") and the March 27, 2013 Judgment (the "Judgment") entered by Judge James S. Gwin, sitting by designation at the United States District Court for the District of Columbia, granting Plaintiff-Appellee Direct Supply, Inc.'s ("Direct Supply") Motion for Summary Judgment on its breach-of-contract claim against Appellants and denying as moot Direct Supply's alternative claims.  (Joint Appendix at A0969

ii

to 78.)  The March 2013 Opinion and Order has been reported as *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 935 F. Supp. 2d 137 (D.D.C. 2013).

In addition, the Court in its August 30, 2013 Order in this appeal (the "August 2013 Order")  referred for disposition by this merits panel NFP's June 11, 2013 Motion for Summary Affirmance and Dismissal as to Appellee Not-For-Profit Hospital Corporation (the "Summary Affirmance Motion") with respect to Direct Supply's breach-of-contract claim against NFP (Count III).  The District Court previously dismissed Direct Supply's breach-of-contract claim against NFP in a July 18, 2012 Opinion and Order (the "July 2012 Opinion and Order"), reported as *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13 (D.D.C. 2012), that has not been appealed by Direct Supply.  In the August 2013 Order, the Court directed the parties to address in their respective briefs the issues presented in the Summary Affirmance Motion, rather than to incorporate those arguments by reference.

**III.  Related Cases**

None.

## RULE 26.1 DISCLOSURE STATEMENT

Appellee Not-For-Profit Hospital Corporation ("NFP"), by its undersigned counsel, hereby identifies the following parent corporation(s) and publicly held corporation(s), if any, that own 10% or more of its stock:

**<u>NONE</u>**.

NFP is "an instrumentality of the District government" with "a separate legal existence within the District government."   D.C. Code § 44-951.02.   Its stated statutory purpose is to "[r]eceive the land, improvements on the land, equipment, and other assets of the United Medical Center;…[o]perate and take all actions to ensure the continued operation of the hospital;…[and s]ell or otherwise transfer all or part of the hospital and site, if a qualified buyer is identified." *Id.*

# **TABLE OF CONTENTS**

CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES ................... ii

RULE 26.1 DISCLOSURE STATEMENT ........................................... iii

TABLE OF AUTHORITIES ......................................................... vii

GLOSSARY ................................................................................x

COUNTERSTATEMENT OF JURISDICTION ................................. 12

COUNTERSTATEMENT OF THE ISSUES ...................................... 12

COUNTERSTATEMENT OF THE CASE ......................................... 14

SUMMARY OF ARGUMENT ...................................................... 21

ARGUMENT ............................................................................ 23

    A.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY
        JUDGMENT TO DIRECT SUPPLY ON ITS BREACH-OF-
        CONTRACT CLAIM AGAINST APPELLANTS. ........................... 23

        1.    The District Court Correctly Rejected Appellants'
               Defenses to Direct Supply's Breach-of-Contract Claim
               against Appellants (Count I) .................................... 24

        2.    The District Court Did Not Fail to "Properly Apportion
               Damages" between Appellants and NFP; Instead, It
               Properly Considered Direct Supply's Breach-of-
               Contract Claim prior to Considering NFP's Potential
               Liability in *Quantum Meruit*. .................................. 30

    B.    NFP IS ENTITLED TO SUMMARY AFFIRMANCE OF THE
        DISMISSAL OF THE BREACH-OF-CONTRACT CLAIM
        AGAINST IT. ........................................................... 38

        1.    Direct Supply's Failure to Cross-Appeal Entitles NFP to
               Summary Affirmance of the Breach-of-Contract Claim
               against It. ........................................................ 39

        2.    In Any Event, the District Court Correctly Held That
               NFP Is Entitled to Dismissal of Direct Supply's Breach-
               of-Contract Claim against It. ................................... 42

CONCLUSION .......................................................................... 47

CERTIFICATE OF SERVICE ...................................................... 49

CERTIFICATE REGARDING WORD COUNT ..................................................50

# <u>TABLE OF AUTHORITIES</u>\*

## Cases

*Associated Third Class Mail Users v. United States Postal Serv.,*
  662 F.2d 767 (D.C. Cir. 1980) ...............................................................42

*Bingham v. Goldberg, Marchesano, Kohlman, Inc.,*
  637 A.2d 81 (D.C. 1994) ................................................................. 43, 46

*Blenard v. Blenard,*
  45 A.2d 335, 340 (Md. 1946) ..............................................................35

*Bowles v. Russell,*
  551 U.S. 205 (2007)......................................................................... 12, 40

*Bud Antle, Inc. v. Eastern Foods, Inc.,*
  758 F.2d 1451 (11th Cir.1985) ............................................................46

*D.C. Trautman Co. v. Fargo Excavating Co.,*
  380 N.W.2d 644 (N.D. 1986) ..............................................................33

*Direct Supply, Inc. v. Specialty Hosps. of Am., LLC,*
  935 F. Supp. 2d 137 (D.D.C. 2013).......................iii, x, 19, 27, 28, 29, 31, 32, 34

\* *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC,*
  878 F. Supp. 2d 13 (D.D.C. 2012)............................................iii, x, 18, 38, 40, 43

\* *E. Capitol View Cmty. Dev. Corp., Inc. v. Robinson,*
  941 A.2d 1036 (D.C. 2008) ......................................................... 28, 29

*Greater Southeast Cmty. Emergency Physicians, LLC v. Capitol Med. Ctr.,*
  *LLC t/a Greater Southeast  Cmty. Hosp.,*
  Case No. 2011 CA 00712 C (D.C. Super. Nov. 15, 2011)...................................43

\* *In re Randolph-Bray,*
  942 A.2d 1142 (D.C. 2008) ..............................................................32

\* *Island Dev. Corp. v. District of Columbia,*
  933 A.2d 340 (D.C. 2007) ........................................................... 25, 26, 28

*Johnson v. Fairfax Village Condominium IV Unit Owners' Ass'n,*
  641 A.2d 495 (D.C. 1994) ..............................................................35

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*,
    870 A.2d 58 (D.C. 2005) .............................................................. 33, 37

*Kakaes v. George Washington Univ.*,
    790 A.2d 581 (D.C. 2002) ........................................................... 32, 33

*Marshall v. District of Columbia*,
    458 A.2d 28 (D.C. 1982) ...................................................................33

*MedAssets v. Capitol Med. Center*,
    Case No. 2010 CA 005679 C (D.C. Super. Apr. 5, 2012)....................................43

*N. Am. Graphite Corp. v. Allan*,
    184 F.2d 387 (D.C. Cir. 1950)...........................................................32

*Prince Const. Co., Inc. v. Dist. of Columbia Contract Appeals Bd.*,
    892 A.2d 380 (D.C. 2006) .................................................................32

*Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*,
    961 F.2d 489 (4th Cir. 1992) ....................................................... 34, 36, 37

*Sodexo Operations, LLC v. Capitol Med. Ctr.*,
    Case No. 2010 CA 002467 (D.C. Super. Feb. 11, 2011) ....................................43

*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*,
    930 F. Supp. 2d 234 (D.D.C. 2013).....................................................43

*Square 345 Ltd. P'ship v. District of Columbia*,
    927 A.2d 1020 (D.C. 2007) ...............................................................33

*Swofford v. Int'l Mercantile Marine Co.*,
    113 F.2d 179 (D.C. Cir. 1940).............................................................42

\* *Tallman v. Udall*,
    324 F.2d 411 (D.C. Cir. 1963), *rev'd on other grounds*, 380 U.S. 1 (1965)........41

*Taxpayers Watchdog, Inc. v. Stanley*,
    819 F.2d 294 (D.C. Cir. 1987).................................................... 39, 42

*Torres v. Oakland Scavenger Co.*,
    487 U.S. 312 (1988)................................................................. 12, 40

*Vulcan Materials Co. v. Atofina Chems., Inc.*,
   355 F. Supp. 2d 1214 (D. Kan. 2005)...................................................................36

*W & W Oil Co. v. Capps*,
   784 S.W.2d 536 (Tex. App. 1990).......................................................................36

**Other Authorities**

Fed. R. App. P. 4 ............................................................................. 39, 40

Restatement (Second) of Contracts § 265 (1981)....................................................27

Restatement (Third) of Restitution and Unjust Enrichment § 25 (2011) ...............33

*\*Authorities upon which Defendant-Appellee Not-For-Profit Hospital Corporation chiefly relies are marked with asterisks.*

# <u>GLOSSARY</u>

<u>August 2013 Order</u> means the August 30, 2013 order of this Court in this appeal denying NFP's motion for summary affirmance and dismissal with respect to the *quantum meruit* claim against NFP (Count IV), and referring the motion to the merits panel with respect to the breach-of-contract claim against NFP (Count III).

<u>Appellants</u> means Defendants-Appellants Specialty Hospitals of America, LLC and Specialty Hospitals of Washington, LLC, collectively.

<u>Appellants' Brief</u> means the opening Brief for Appellant filed by Appellants.

<u>Appellants' Opposition</u> means the opposition to Direct Supply's Motion for Summary Judgment filed by Appellants in the District Court.

<u>Contract</u> means the August 2008 and February 2009 "Product and Services Agreements" between Direct Supply and Appellants with a total value of over six hundred thousand dollars.

<u>Direct Supply</u> means Plaintiff-Appellee Direct Supply, Inc.

<u>Judgment</u> means the March 27, 2013 final judgment entered by the District Court and now appealed from by Direct Supply.

<u>March 2013 Opinion and Order</u> means the March 27, 2013 opinion and order entered by the District Court granting summary judgment for Direct Supply against Appellants on Direct Supply's breach-of-contract claim (Count I) and denying relief on all other counts of Direct Supply's Complaint as moot, reported as *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 935 F. Supp. 2d 137 (D.D.C. 2013) ("*Direct Supply II*").

<u>Judgment</u> means the March 27, 2013 final Judgment entered by the District Court stating that the District Court granted Direct Supply's breach-of-contract claim against Appellants and denied as moot all of Direct Supply's alternative claims, now appealed from by Appellants.

<u>July 2012 Opinion and Order</u> means the July 18, 2012 opinion and order entered by the District Court granting NFP's motion to dismiss Direct Supply's breach-of-contract claim against it (Count III), reported as *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13 (D.D.C. 2012) ("*Direct Supply I*").

x

<u>NFP</u> means Defendant-Appellee Not-For-Profit Hospital Corporation.

<u>Notice of Appeal</u> means the April 25, 2013 Civil Notice of Appeal filed by Appellants that commenced the instant appeal.

<u>SHA</u> means Defendant-Appellant Specialty Hospitals of America, LLC.

<u>SHW</u> means Defendant-Appellant Specialty Hospitals of Washington, LLC.

<u>Summary Affirmance Motion</u> means NFP's June 11, 2013 Motion for Summary Affirmance and Dismissal as to Appellee Not-For-Profit Hospital Corporation filed in this appeal.

<u>UMC</u> means the United Medical Center, which was at one time owned and operated by Appellants and certain of their affiliated entities.

## COUNTERSTATEMENT OF JURISDICTION

NFP does not dispute the contents of the Jurisdictional Statement set forth in Appellants' Brief. *See* Appellants' Brief at viii to ix. However, to the extent this Court's August 2013 Order can be read to invite consideration of the merits of the District Court's dismissal of Count III of the Complaint, which alleged breach of contract against NFP, Direct Supply's failure to appeal the District Court's dismissal of that Count presents a jurisdictional bar to such consideration. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315 (1988) (holding that requirements of Fed. R. App. P. 4 are mandatory and jurisdictional); *see also Bowles v. Russell*, 551 U.S. 205, 209 n.2 (2007) (noting that "it is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century"). Accordingly, and as discussed more fully below, in the event the Court reverses the entry of summary judgment against Appellants, the Court may not consider the merits of Count III. Instead, the Court should summarily affirm on jurisdictional grounds the District Court's dismissal of Count III in its July 2012 Opinion and Order.

## COUNTERSTATEMENT OF THE ISSUES

The issues presented by this appeal are as follows:

- Whether the District Court correctly entered summary judgment for Direct Supply against Appellants on Count I of the Complaint because

12

the undisputed material facts of this case do not present the type of "extreme circumstances" under which Appellants' performance under the Contract may be excused by the doctrines of impossibility or frustration-of-purpose.

- Whether the District Court correctly concluded that it need not reach the issue of NFP's potential liability in *quantum meruit* because Direct Supply and Appellants executed a valid express contract and because Appellants' defenses to breach-of-contract liability were unavailing.

- Whether, in the event the Court reverses the entry of summary judgment in favor of Direct Supply and against Appellants, NFP is entitled to summary affirmance of the District Court's dismissal of Direct Supply's breach-of-contract claim against it due to Direct Supply's failure to notice an appeal from the District Court's July 2012 Opinion and Order and the March 27, 2013 final Judgment in this case (or, in the alternative, on the merits).

## COUNTERSTATEMENT OF THE CASE

The "Statement of the Facts" included in the Brief for Appellants ("Appellants' Brief") omits several key facts about the proceedings below and on this appeal. Those omitted and uncontroverted[1] facts include the following:

1.    In August 2008 and February 2009, Appellants entered into two "Product and Services Agreements" with Direct Supply (the "Contract"), pursuant to which Direct Supply agreed to deliver certain goods to Appellants with a total value of over six-hundred-thousand dollars. (Joint Appendix at A0178; A0188-229.)

---

[1] In the proceedings below, Appellants did not dispute any of the facts contained in Direct Supply's statement of material facts in support of its Motion for Summary Judgment. *See* Joint Appendix at A0394 to 398. Instead, notwithstanding Appellants' failure to file a cross-claim against NFP for indemnification, contribution, or equitable apportionment, Appellants argued before the trial court that "the only matter in dispute between the parties" was "apportionment of damages between NFP and Specialty," and that the "only question this Court need answer is 'against whom, and in what percentage, shall judgment enter?'" (Joint Appendix at A0393.) Appellants now press similar claims before this Court as well. *See* Appellants' Brief at 9-10 ("There is no dispute as to the contract, SHW's breach thereof, NFP's current possession of the goods and services, or Direct Supply's right to compensation. The sole issue in this appeal relates to the inequitable relief afforded to Direct Supply at the expense of SHA and SHW."). *See also* Appellants' Opposition to Motion for Summary Affirmance and Dismissal as to Appellee Not-For Profit Hospital Corporation at 2 ("SHW will argue, on appeal, that the Court was incorrect to hold SHW responsible for 100% of the goods in light of NFP's retention of the goods, and that an equitable solution apportioning the damages between SHW and NFP was proper in light of the facts and circumstances of the case."). As discussed below, there is no legal basis for Appellants' claim of entitlement to an "apportionment of damages."

2.     Direct Supply provided the products required by the Contract to Appellants in March 2009 and invoiced Appellants for those products that same month.  (Joint Appendix at A0179; A0189.)

3.     The goods provided by Direct Supply pursuant to the Contract were for Appellants' use at the United Medical Center ("UMC"), which, at that time, Appellants owned and operated through affiliated entities.  (Joint Appendix at A0178 to 79; A0190.)

4.     Beginning on or about July 2009, Direct Supply made multiple demands to Appellants for payment due under the Contract.  (Joint Appendix at A0179; A0190.)

5.     By letter dated August 21, 2009, Appellants acknowledged in writing to Direct Supply their obligation to pay the outstanding balance under the Contract and stated that they were agreeing to pay Direct Supply $25,000 on a bi-weekly basis until they had closed on a line of credit, at which time they would pay the entire balance due to Direct Supply.  (Joint Appendix at A0179; A0231.)

6.     By email dated June 9, 2010, Appellants again acknowledged in writing to Direct Supply their "outstanding balance" under the Contract and proposed a payment plan for that outstanding balance.  (Joint Appendix at A0179 to 80; A0233.)

7.      NFP, an independent instrumentality of the District of Columbia
Government, came into existence on July 7, 2010 by operation of D.C. Act 18-
476, the Not-for-Profit Hospital Corporation Establishment Emergency
Amendment Act of 2010. (Joint Appendix at A0030 to 41.)

8.      On July 12, 2010, pursuant to Mayoral Order 10-117, the land and
premises of UMC, along with all furniture, furnishings, fixtures, goods, equipment,
inventory, and personal property used or furnished in operating the UMC, which
the District of Columbia (the "District") had obtained through a public foreclosure
sale conducted on July 9, 2010, were transferred to the jurisdiction and control of
NFP. (Joint Appendix at A0124 to 25; *see also* Joint Appendix at A0036, Sec.
107.)

9.      Subsequent to the creation of NFP and the commencement of NFP's
management and operation of UMC and of the furniture, furnishings, fixtures,
goods, equipment, inventory, and personal property used or furnished in UMC's
operation, Appellants continued to acknowledge their liability for repayment of the
balance owed under the Contract and, on July 30, 2010, made at least one payment
to Direct Supply in the amount of $50,190.84. (Joint Appendix at A0180; A0241.)

10.     By email dated December 22, 2010, Appellants for the first time
advised Direct Supply that Appellants were taking the position that NFP was liable

for payment of the outstanding balance on the Contract. (Joint Appendix at A0181; A0251.)

11.   On April 6, 2011, Direct Supply filed the four-count Complaint that commenced this action in the trial court, naming Appellants and NFP as Defendants. (Joint Appendix at A0001 to 9).

12.   Count I of the Complaint alleged breach of contract by Appellants, seeking to hold Appellants liable for damages in the amount of $462,055.17 plus interest, attorneys fees and other costs. (Joint Appendix at A0005 to 6.)

13.   Count II of the Complaint alleged entitlement to recovery in *quantum meruit* from Appellants, predicated on Appellants having accepted products delivered by Direct Supply with the expectation of paying Direct Supply for those products. (Joint Appendix at A0006.)

14.   Count III of the Complaint, expressly pled "In the Alternative to Count I," alleged breach of contract by NFP; specifically, Direct Supply sought relief against NFP for breach of contract "[i]n the alternative to the relief sought in Count I, and to the extent that any obligations arising under the Products & Services Agreements were transferred to NFP pursuant to Mayoral Order 10-117, NFP is in material breach of the Products & Services Agreements by failing to comply with its obligations to pay all amounts due thereunder to Direct Supply." (Joint Appendix at A0006 to 7.)

17

15.    Count IV of the Complaint, expressly pled "In the Alternative to Count II," alleged entitlement to recovery in *quantum meruit* from NFP[2]; specifically, Direct Supply sought relief against NFP in *quantum meruit* "[i]n the alternative to the relief sought in Count II, and to the extent that any obligations arising from the delivery and acceptance of the products in question was transferred to NFP pursuant to Mayoral Order 10-117, NFP is liable for such damages to Direct Supply."  (Joint Appendix at A0007 to 8.)

16.    At no time did Appellants file a cross-claim against NFP or otherwise plead entitlement to indemnity, contribution or equitable apportionment for any liability arising under the Contract.

17.    In its July 2012 Opinion and Order, the District Court granted NFP's Motion to Dismiss Count III, in which Direct Supply had alleged breach of contract by NFP.  *See Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13, 22 (D.D.C. 2012) ("*Direct Supply I*") (Joint Appendix at A0339) ("Accordingly, Direct Supply 'can prove no set of facts in support of their [breach-of-contract] claim [against NFP] which would entitled them to relief,' and the Court dismisses Count III of the complaint.") (alterations in original) (citation omitted).

---

[2] As the District Court noted, "[t]he parties agree that Count IV of Direct Supply's complaint – though mistakenly labeled as a breach-of-contract claim – purports to state a claim for quantum meruit against NFP." *Direct Supply I*, 878 F. Supp. 2d at 18 n.4.

18.    In its March 2013 Opinion and Order, the District Court granted Direct Supply's Motion for Summary Judgment against Appellants on Count I of the Complaint, which alleged breach of contract by Appellants, and denied as moot all of Direct Supply's alternative claims, including its sole remaining claim against NFP, which sounded in *quantum meruit* (Count IV).  *See Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 935 F. Supp. 2d 137, 143 (D.D.C. 2013) ("*Direct Supply II*") (Joint Appendix at A0976) ("For the foregoing reasons, this Court GRANTS Direct Supply's motion for summary judgment on its breach of contract claim against Specialty Hospital, and DENIES AS MOOT all of Direct Supply's alternative claims.")

19.    In the March 2013 Opinion and Order, the District Court ordered Appellants to pay Direct Supply the full remaining Contract balance of $462,055.17 "along with interest, late charges, costs, and attorney's fees."  *Direct Supply II*, 935 F. Supp. 2d at 143.  (Joint Appendix at A0976 to 77.)

20.    On March 27, 2013, the District Court entered final Judgment (the "Judgment") stating that "[t]he Court GRANTS Direct Supply's motion for summary judgment on its breach of contract claim against Specialty Hospital, and DENIES AS MOOT all of Direct Supply's alternative claims." (Joint Appendix at A0978.)

21.    On April 25, 2013, Appellants filed a Civil Notice of Appeal (the "Notice of Appeal") stating that Appellants were appealing the Judgment.  (Joint Appendix at A0979.)

22.    At no time did Direct Supply appeal from the Judgment  or otherwise challenge the District Court's dismissal of Count III in the July 2012 Opinion and Order or its dismissal of Count IV in the March 2013 Opinion and Order.

23.    On June 11, 2013, NFP filed in this Court its Motion for Summary Affirmance and Dismissal as to Appellee Not-For-Profit Hospital Corporation (the "Summary Affirmance Motion"), arguing that NFP was entitled to summary affirmance of the District Court's entry of judgment in its favor and dismissal from the appeal (based on the absence of any issue-in-controversy between Appellants and NFP and on Direct Supply's failure to notice a cross-appeal against NFP).

24.    On August 30, 2013, this Court issued the August 2013 Order, denying the Summary Affirmance Motion with respect to Direct Supply's *quantum meruit* claim against NFP (Count IV) because in the Court's view "[t]here is no basis for requiring Direct Supply to cross-appeal the denial as moot of its *quantum meruit* claim against Not-for-Profit Hospital," because "Direct Supply prevailed in district court, receiving all of its requested relief, and does not seek to modify the judgment."  (August 2013 Order at 1.)

25.     The August 2013 Order further ordered that the Summary Affirmance Motion "be referred to the merits panel with respect to the contract claim, which was dismissed for failure to state a claim," because "[t]he merits of the parties' positions are not so clear as to warrant summary action." (August 2013 Order at 1.)

26.     The August 2013 Order further directed the parties "to address in their briefs the issues presented in the motion to dismiss rather than incorporate those arguments by reference." (August 2013 Order at 2.)

## SUMMARY OF ARGUMENT

Appellants concede that "[t]here is no dispute as to the contract, SHW's breach thereof . . . , or Direct Supply's right to compensation," (Appellants' Brief at 9) and instead argue that, as of the July 9, 2010 foreclosure sale, they are excused from making further payments under the Contract by the doctrines of impossibility and frustration of purpose. However, the Court of Appeals for the District of Columbia has recognized that those doctrines are to be applied in "extreme circumstances" only and not on facts analogous to those presented here. Accordingly, the District Court correctly concluded that Appellants could not be excused from their contractual obligations and properly entered summary judgment for Direct Supply and against Appellants on Count I of the Complaint.

Appellants' contention that the "District Court failed to properly apportion damages," (Appellants' Brief at 14), as between Appellants and NFP ignores the fact that the trial court never made a finding of liability on the part of NFP, as well as the fact that Appellants never filed a cross-claim against NFP (their co-defendant) asserting a right to indemnity, contribution, or equitable apportionment. Accordingly, there is no basis for any liability to be apportioned as between Appellants and NFP. Moreover, in light of the express Contract between Direct Supply and Appellants - that predated the existence of NFP and the July 9, 2010 foreclosure sale and that Appellants admittedly breached - the District Court correctly concluded that there was no legal basis for a finding of *quantum meruit* liability on the part of NFP.

The Court has directed the parties to address whether NFP is entitled to summary affirmance of the District Court's dismissal of Direct Supply's breach-of-contract claim against NFP (Count III) in its July 2012 Opinion and Order. NFP is in fact entitled to such relief as a consequence of Direct Supply's failure to notice an appeal from the July 2012 Opinion and Order. Moreover, even if the Court does not find Direct Supply's failure to notice an appeal of the July 2012 Opinion and Order dispositive of this issue, the District Court's dismissal of Count III was required as a matter of law and should not now be disturbed.

To summarize, the District Court's grant of summary judgment in favor of Direct Supply and against Appellants on their breach-of-contract claim should be affirmed and this Court need take no further action.  In the event the Court decides to reverse the grant of summary judgment against Appellants, however, the Court nevertheless should summarily affirm the District Court's earlier dismissal of Direct Supply's breach-of-contract claim against NFP (Count III) based on Direct Supply's failure to appeal that issue.  If the Court does elect to consider the merits of the District Court's dismissal of Count III, despite its lack of jurisdiction and the fact that the dismissal is not properly a subject of this appeal, that dismissal should be affirmed in any event.

## ARGUMENT

### A. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO DIRECT SUPPLY ON ITS BREACH-OF-CONTRACT CLAIM AGAINST APPELLANTS.

The District Court correctly rejected Appellants' frustration and impossibility defenses to Direct Supply's breach-of-express-contract claim because Appellants received good and valuable consideration from Direct Supply in the form of the contracted-for goods and because Appellants expressly concede that they have the ability to make further payment to Direct Supply.  In addition, the District Court properly declined to reach the merits of Direct Supply's *quantum meruit* claim against NFP, because, as the District Court correctly recognized, that

23

claim was foreclosed by Appellants' liability under the express Contract between Direct Supply and Appellants.   Accordingly, the District Court appropriately granted summary judgment to Direct Supply on its breach-of-contract claim against Appellants and properly dismissed the *quantum meruit* claim against NFP, and there was no obligation on the part of the District Court to "apportion" liability between Appellants and NFP.

> **1.     The District Court Correctly Rejected Appellants' Defenses to Direct Supply's Breach-of-Contract Claim against Appellants (Count I).**

The District Court's rejection of the defenses raised by Appellants' to Direct Supply's breach-of-contract claim (Count I) was entirely proper.   Appellants concede that "[t]here is no dispute as to the contract," as to "SHW's breach thereof," or as to "Direct Supply's right to compensation." (Appellants' Brief at 9). Instead, Appellants argue that they need not make payment to Direct Supply because "further performance" under the Contract with Direct Supply "was frustrated and rendered commercially impracticable by the intervening seizure of United Medical Center a little over a year into SHW's ownership of the goods." (Appellants' Brief at 10).   For the reasons set forth below, the District Court correctly held that Appellants' asserted defenses of frustration-of-purpose and impossibility have no applicability here given the undisputed material facts.

As an initial matter, it should be noted that "[t]he doctrines of frustration of purpose and impossibility will relieve a party of his obligations under a contract *only in extreme circumstances*."  *Island Dev. Corp. v. District of Columbia*, 933 A.2d 340, 350 (D.C. 2007) (emphasis added).  As the District Court correctly recognized, no such circumstances are present here; instead, the District Court's rejection of Appellants' frustration-of-purpose and impossibility defenses was required given that Appellants do not dispute that: 1) Appellants had an express agreement with Direct Supply to pay for the goods provided by Direct Supply; 2) Direct Supply delivered the contracted-for goods in March of 2009; 3) Appellants retained and used the contracted-for goods through July of 2010; 4) Appellants repeatedly reaffirmed their obligation to make payment to Direct Supply even after the District had taken possession of the goods; 5) Appellants paid more than $50,000 to Direct Supply to compensate it for the purchased goods <u>after</u> the District had taken possession of the goods; and 6) Appellants expressly conceded in their Opposition to Direct Supply's Motion for Summary Judgment that they could still pay Direct Supply for the delivered goods.  In light of these uncontroverted facts and as discussed in additional detail below, Appellants' claim that "'extreme' or 'exceptional' circumstances," (Appellants' Brief at 10), excuse any further payment by Appellants to Direct Supply based on the doctrines of frustration of purpose or impossibility, is unavailing.

25

Under the defense of frustration of purpose, "the promissor's performance is excused because changed conditions have rendered the performance bargained from the promisee worthless, not because the promissor's performance has become different or impracticable." *Island Dev.*, 933 A.2d at 349. Here, the performance by Direct Supply that Appellants bargained for, delivery of the goods at issue in March of 2009, cannot be said to have become "worthless" in any sense. Appellants do not dispute that they received the bargained-for goods from Direct Supply and that they remained in possession of them for more than a year. Direct Supply therefore furnished good and valuable consideration to Appellants, *see Id.* (noting that "[u]nder frustration analysis the court is concerned with the impact of the event *upon the failure of consideration*") (emphasis added), and Appellants' claim that Direct Supply's performance was "worthless" cannot be credited.

Appellants further argue that because the subsequent actions of the District and/or NFP deprived them of the value of the goods provided by Direct Supply, they nevertheless are entitled to assert the defense of frustration-of-purpose. *See* Appellants' Brief at 10 ("Specialty Hospitals' argument was to the contrary: they agreed that SHW was liable to Direct Supply for the goods up to the point where further performance became an absurdity due to DC's seizure of the Direct Supply goods and its immediate transfer of the goods to NFP.") However, the mere fact that Appellants eventually lost use of the goods as a result of actions taken by

26

others does not make the goods "worthless" or otherwise lead to the conclusion that Appellants did not receive the benefit of their bargain with Direct Supply.[3]  As the District Court correctly recognized (and in keeping with the focus of the frustration-of-purpose doctrine on the failure of consideration), "[f]rustration of purpose traditionally occurs *before* the promisee's performance."  *Direct Supply II*, 935 F. Supp. 2d at 141 & n.26 (citing Restatement (Second) of Contracts § 265, illustration 1 (1981)) (emphasis added).  Appellants fail to respond to (or even acknowledge) the District Court's observation that "Specialty Hospital does not provide a single case – from this jurisdiction or elsewhere – to lend support to its theory that a frustration of purpose defense can be asserted after a party's performance."  *Id*. at 142.  In the absence of any such authority, the defense of frustration of purpose cannot be argued to excuse Appellants from their contractual obligations to Direct Supply.

Appellants also purport to rely on the defense of impossibility, which "excuses a promissor from performance because a supervening event changes the nature of the promissor's performance so that it has become commercially

---

[3] It also should be noted that, to the extent Appellants complain of the actions taken by the District and/or NFP, Appellants had the opportunity to bring claims based on those actions in a cross-claim or third-party lawsuit, but have failed to do so.  Simply because Appellants now seek to shift to NFP the liability flowing from their conceded breach of contract, it does not follow that the actions of the District and/or NFP are somehow determinative of whether Direct Supply may fully pursue its contractual remedies against Appellants.

impracticable." *Island Dev.*, 933 A.2d at 349. A defendant asserting this defense must prove "a real impossibility and not a mere inconvenience or unexpected difficulty." *E. Capitol View Cmty. Dev. Corp., Inc. v. Robinson*, 941 A.2d 1036, 1040 (D.C. 2008) (internal quotation and citation omitted). In addition, "courts will generally only excuse non-performance where performance is objectively impossible – that is, the contract is incapable of performance by anyone – rather than instances where the party subjectively claims the inability to perform." *Id.* (citation omitted). Thus, it is "generally well settled that subjective impossibility, that is, impossibility which is personal to the promissor and does not inhere in the nature of the act to be performed, does not excuse non-performance." *Id.* (internal quotation and citation omitted).

As pointed out by the District Court, Appellants in their own Opposition to Direct Supply's Motion for Summary Judgment ("Appellants' Opposition") expressly concede that their contractual obligations were excused "not because the promissor's performance has become different or impracticable," and further acknowledge that "Specialty Hospital's payment is still possible." *Direct Supply II*, 935 F. Supp. 2d at 142 (internal quotations and citations omitted) (emphasis added). Appellants now complain that the District Court selectively quoted from Appellants' Opposition when it concluded that Appellants had "admit[ted] that [their] performance had not become impracticable." *See* Appellants' Brief at 12-

28

13 (citing *Direct Supply II*, 935 F. Supp. 2d at 142). However, the very next sentence of Appellants' Opposition (which Appellants now argue that the District Court selectively *omitted* to quote in the March 2013 Opinion and Order), begins: "Specialty *can still pay* Direct Supply for the goods . . . ," (Appellants's Brief at 12) (emphasis added), again demonstrating that there is no merit to Appellants' claim of impossibility of performance.

Having expressly conceded the inapplicability of an impossibility defense, Appellants nevertheless argue that the District's seizure of UMC and its contents "created an absurdity that warranted consideration in the context of Specialty Hospitals' impossibility/commercial impracticability argument." (Appellants' Brief at 13). Appellants cite no authority for the proposition that the existence of an alleged "absurdity" warrants the application of an impossibility defense. However "absurd" Appellants deem their continuing contractual obligations to be, Appellants set forth no legal basis for the District Court to have concluded that they have met their burden of establishing "a *real impossibility* and not a mere inconvenience or unexpected difficulty," or that "the contract is *incapable of performance* by anyone . . . ." *E. Capitol View*, 941 A.2d at 1040 (emphasis added). Absent any basis for such a claim, the District Court correctly held that Appellants' asserted defense of impossibility should be rejected.

> **2.    The District Court Did Not Fail to "Properly Apportion Damages" between Appellants and NFP; Instead, It Properly Considered Direct Supply's Breach-of-Contract Claim prior to Considering NFP's Potential Liability in *Quantum Meruit*.**

Notwithstanding the absence of any finding of liability on the part of NFP by the District Court, Appellants nevertheless claim that the District Court should have "properly apportion[ed] damages" between Appellants and NFP. (Appellants' Brief at 14.)  As a threshold matter, Appellants failed to file a cross-claim against NFP or otherwise plead their entitlement to indemnity or contribution from NFP (or to an equitable apportionment of damages as between Appellants and NFP), such that the District Court would have had a legal basis to assess against NFP a portion of the damages flowing from Appellants' admitted breach of contract.  Thus, there was no basis for the District Court to have "apportioned" damages in this case and the District Court did not err in entering its final Judgment against Appellants and dismissing the remaining *quantum meruit* claim against NFP.

Appellants also appear to argue that the District Court erred by first considering Appellants' breach-of-contract liability to Direct Supply and thereafter overlooking NFP's potential liability in *quantum meruit*.  Specifically, Appellants claim that "[b]ecause NFP was not a party to the express agreement, the fact that a valid express contract exists between Direct Supply and SHA and SHW does not

foreclose an award of *quantum meruit* damages against NFP," (Appellants' Brief at 15-16), and that the District Court erred when it concluded that "all [it] needed to examine was who signed the contract and that [it] would then turn a judicial blind eye to all events thereafter." (Appellants' Brief at 17). Contrary to Appellants' suggestion, the District Court did not "turn a judicial blind eye" to any event at issue in this case. Instead, having determined that Appellants were fully liable to Direct Supply for breach of the express Contract, the Court properly concluded there were no further issues to address and entered its Judgment against Appellants. *See Direct Supply II*, 935 F. Supp. 2d at 143 ("Were this Court to find against Direct Supply on its claims against Specialty Hospital, Direct Supply asks for judgment against NFP o[n] the *quantum meruit* claim. Because all parties agree that Direct Supply and Specialty Hospital executed a valid contract, and because Direct Supply's affirmative defenses are unavailing, this Court need not reach this issue.").

The District Court's actions in this regard were proper in light of the fact that, as a consequence of the District Court's July 2012 dismissal of Direct Supply's breach-of-contract claim against NFP (Count III), the sole remaining count against NFP at the time the District Court decided Direct Supply's Motion for Summary Judgment was Count IV, which sounded in *quantum meruit*, an

equitable remedy.[4]  *See Prince Const. Co., Inc. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380, 382 n.1 (D.C. 2006) ("Quantum meruit is an equitable remedy . . . .").  The courts of the District of Columbia recognize that "[i]t is 'axiomatic,' under the general principles of equity, that equitable relief *may not be granted* where the person seeking relief has a complete and adequate remedy at law."  *In re Randolph-Bray*, 942 A.2d 1142, 1147 (D.C. 2008) (citing *Kakaes v. George Washington Univ.*, 790 A.2d 581 (D.C. 2002)) (emphasis added).  In accordance with that principle, the District Court properly considered as an initial matter whether Direct Supply could avail itself of a complete and adequate remedy at law as a consequence of Appellants liability for breach of the express Contract.  Indeed, there would be no legal basis for the District Court to thereafter consider NFP's potential liability in *quantum meruit* unless and until Direct Supply failed to obtain a complete recovery against Appellants.[5]  *See Randolph-Bray*, 942 A.2d at

---

[4] The District Court itself recognized the equitable nature of the relief sought by Direct Supply, in the alternative, against NFP.  *See Direct Supply II*, 935 F. Supp. 2d at 139 ("[Direct Supply] now asks this Court to make Specialty Hospital pay up, or in the alternative, to find against NFP *on equitable grounds*.") (emphasis added).

[5] Appellants' citation to *North American Graphite Corp. v. Allan*, 184 F.2d 387, 389 (D.C. Cir. 1950) for the proposition that "[t]his Court has held that a suit on contract carried to an *unsuccessful* judgment is not res judicata to a subsequent suit in quantum meruit based on the same facts," is misplaced.  (Appellants' Brief at 14) (emphasis added).  Here, Direct Supply's effort to obtain judgment against Appellants was anything but "unsuccessful"; rather, Direct Supply established its entitlement to recover the entirety of its damages from Appellants.  Moreover, as Direct Supply argued to the District Court, its *quantum meruit* claim against NFP sought "at its core an equitable form of relief that is meant to prevent unjust

32

1147 (reversing trial court's invocation of its equity powers to sanction fiduciary based on existence of remedies at law against fiduciary); *Square 345 Ltd. P'ship v. District of Columbia*, 927 A.2d 1020, 1025-26 (D.C. 2007) (affirming trial court's decision not to exercise its equitable jurisdiction to compromise tax claims based on existence of adequate remedy at law for petitioner); *Kakaes*, 790 A.2d at 583-85 (affirming trial court's denial of specific performance where plaintiff "has not shown why damages would not provide him with full and complete relief"); *Marshall v. District of Columbia*, 458 A.2d 28, 30 (D.C. 1982) (affirming trial court's denial of injunctive relief based on failure by plaintiff to exhaust administrative and legal remedies). *See also D.C. Trautman Co. v. Fargo Excavating Co.*, 380 N.W.2d 644, 645-46 (N.D. 1986) (holding that first defendant's breach-of-contract liability for entirety of plaintiff's damages constituted adequate remedy at law that precluded equitable relief in *quantum*

enrichment." (Joint Appendix at A0918.)  In *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Insurance Co.*, 870 A.2d 65 (D.C. 2005), the District of Columbia Court of Appeals cited approvingly to the then-draft Restatement (Third) of Restitution and Unjust Enrichment, which states that liability for unjust enrichment may be imposed *only* if "*[a]bsent liability in restitution, the claimant will not be compensated* for the performance in question . . . ."  Restatement (Third) of Restitution and Unjust Enrichment § 25 (2011) (emphasis added).  As this excerpt from the Restatement confirms, once the District Court determined that Direct Supply would be fully compensated based on Appellants' liability for breach of express contract, there no longer existed any basis for the imposition of *quantum meruit* liability predicated on the unjust enrichment of NFP. Accordingly, the District Court properly denied Direct Supply's alternative claim against NFP as moot.

*meruit* against second defendant).    Having found Appellants liable to Direct Supply for breach of contract in an amount equal to the entirety of Direct Supply's damages, the District Court correctly concluded that it "need not reach" the issue of NFP's potential liability in *quantum meruit*.  *Direct Supply II*, 935 F. Supp. 2d at 143.  That conclusion should not now be disturbed on appeal.[6]

Appellants also purport to rely on *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 493 (4th Cir. 1992), a case decided under Virginia law, in which the United States Court of Appeals for the Fourth Circuit held that a plaintiff's claim sounding in *quantum meruit* is not necessarily barred by the existence of an express contract between the plaintiff and a third party concerning the same subject matter.[7]  However, unlike this case, in which Direct

---

[6] For that same reason, any potential alternative liability that NFP might have in *quantum meruit* is *not* a defense to Appellants' liability for breach of contract, as Appellants' appear to suggest.  *See* Appellants' Brief at 11 (arguing that the contract defense of frustration-of-purpose applies in part because "NFP has retained the goods for a far more 'significant period of time' (to quote the District Court) of their usable life and owes Direct Supply fair compensation under the doctrine of quantum meruit").  Again, the question of whether NFP has *quantum meruit* liability to Direct Supply cannot be reached unless and until a determination is made that Direct Supply does not have a complete and adequate remedy at law.  Thus, the contention that the existence of a potential *quantum meruit* remedy against a second defendant (here, NFP) militates against the existence of a complete and adequate remedy at law (in this case, Appellants' breach-of-contract liability to Direct Supply) is entirely circular and should be rejected.

[7] There has been no similar holding by any court applying the law of the District of Columbia.  In *Jordan Keys*, the District of Columbia Court of Appeals expressly declined to consider whether a claim sounding in *quantum meruit* may be barred by a contract with a third party covering the same subject matter, stating that it

Supply successfully established its right to recover the entirety of its damages against Appellants for their breach of contract, there was no opportunity for the plaintiff in *Raymond* to obtain a judgment on a breach-of-contract claim.  Thus, in *Raymond*, recourse to the equitable remedy of *quantum meruit* was not barred by the existence of a complete and adequate remedy at law.  That is not the case here, as Direct Supply has successfully obtained its Judgment against Appellants for the full amount of its damages claim.

Moreover, even if there were no complete and adequate remedy at law precluding Direct Supply from recovering under a *quantum meruit* theory, Appellants ignore the distinction drawn in *Raymond* between those cases in which, as here, the *quantum meruit* defendant is "foreign" to the express contract with a third party and cannot be said to have induced conferral of the benefit (in which

---

"need not decide the merits of St. Paul's contention that the contract between Jordan Keys and the Hospital precludes recovery against St. Paul for unjust enrichment, for in our view, St. Paul has not been unjustly enriched."  On an undecided issue of common law, the courts of the District of Columbia look to the law of Maryland.  *See Johnson v. Fairfax Village Condominium IV Unit Owners' Ass'n*, 641 A.2d 495, 506 n.22 (D.C. 1994) (noting that District of Columbia courts look to Maryland law "because the District of Columbia derives its common law from the state of Maryland").  In *Blenard v. Blenard*, 45 A.2d 335, 340 (Md. 1946), the Maryland Court of Appeals held that the existence of a contract between a father and son was "incompatible with recovery on a quantum meruit" by the father against a third party (the son's wife), suggesting that, contrary to the holding in *Raymond*, a District of Columbia court would conclude that the existence of a contract with a third party governing the same subject matter as a claim in *quantum meruit* would categorically bar that *quantum meruit* claim.  In any event, even if the District were to adopt the approach taken in *Raymond*, this case is distinguishable from *Raymond* for the reasons discussed herein.

case the *quantum meruit* claim is barred by the existence of the express contract and cannot go forward) and those cases in which, as in *Raymond*, the *quantum meruit* defendant "hardly would have been deemed 'foreign'" to the express contract" and in fact "requested [the contracted-for] work," (in which case a recovery in *quantum meruit* is not necessarily barred by the existence of the express contract). *Raymond*, 961 F.2d at 492. *See Vulcan Materials Co. v. Atofina Chems., Inc.*, 355 F. Supp. 2d 1214, 1239-40 (D. Kan. 2005) ("[T]he Fourth Circuit has explicitly rejected the suggestion that various cases, including *W&W Oil*,[8] stand for the principle that the existence of a contract remedy against one defendant necessarily bars equitable claims against all other parties; instead, the doctrine only protects third parties who were 'foreign' to the contract in that they did not aid in inducing the plaintiff's actions.") (citing *Raymond*, 961 F.2d at 492; *W & W Oil Co. v. Capps*, 784 S.W.2d 536 (Tex. App. 1990)).  Thus, the key inquiry informing whether the existence of an express contract bars a claim in *quantum meruit* against a third-party defendant is whether, at the time the goods or services were provided by the plaintiff, the circumstances were such that it would

---

[8] In *W & W Oil*, the court held that the rule that a plaintiff is precluded from recovering in *quantum meruit* when an express contract covers the goods and services at issue is applicable "not only when the plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, *but also as in the situation before us, when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance*." 784 S.W.2d at 537 (citations omitted) (emphasis added).

have been reasonable for the *quantum meruit* defendant to have assumed it would have to pay for them.  *See Raymond*, 961 F.2d at 492 (noting that "[t]he jury found that [the *quantum meruit* defendant] *requested* [plaintiff's] accounting services under circumstances in which it was reasonable for [the *quantum meruit* defendant] to assume that it would have to pay for them").  *See also Jordan Keys*, 870 A.2d at 62 (evaluating existence of *quantum meruit* claim based on whether "*[a]t the time [plaintiff] provided services* to the Hospital, [*quantum meruit* defendant] was placed on notice that [plaintiff] expected to be paid for those services by [*quantum meruit* defendant]") (emphasis added).

Here, Appellants do not dispute that they contracted with Direct Supply for the provision of goods prior to the transfer of ownership and operational rights for the United Medical Center to NFP.  Indeed, NFP did not even exist at the time Direct Supply entered into, and then breached, the express Contract.  Accordingly, NFP was entirely "foreign" to Appellants' express Contract with Direct Supply and the existence of that express Contract therefore precludes Direct Supply's *quantum meruit* claim against NFP under the holdings of *Raymond*, *Vulcan Materials*, and *W & W Oil*.  The District Court's decision to decline to reach the merits of Direct Supply's *quantum meruit* claim against NFP is proper for this reason as well.

## B. NFP IS ENTITLED TO SUMMARY AFFIRMANCE OF THE DISMISSAL OF THE BREACH-OF-CONTRACT CLAIM AGAINST IT.

On June 11, 2013, NFP filed its Summary Affirmance Motion in this appeal, based in part on the fact that Direct Supply failed to notice a cross-appeal of the District Court's dismissal of Direct Supply's *quantum meruit* allegations against NFP (Count IV), which at that time was the only remaining count of the Complaint naming NFP as a defendant. This Court held that the Summary Affirmance Motion would be denied with respect to the *quantum meruit* claim (Count IV), but directed that the motion be referred to this merits panel with respect to the breach-of-contract claim against NFP (Count III) that the District Court previously had dismissed in its July 2012 Opinion and Order. Specifically, the Court ordered "that the motion be referred to the merits panel with respect to the contract claim, which was dismissed for failure to state a claim," because "[t]he merits of the parties' positions are not so clear as to warrant summary action." (August 2013 Order at 1.) The August 2013 Order further directed the parties "to address in their briefs the issues presented in the motion to dismiss rather than incorporate those arguments by reference." (August 2013 Order at 2.)

For the reasons set below, Direct Supply may not now resuscitate its breach-of-contract claim against NFP, which the District Court properly dismissed in its July 2012 Opinion and Order. *See Direct Supply I*, 878 F. Supp. 2d at 22

("[T]he Court dismisses Count III of the complaint.").  Pursuant to Fed. R. App. P. 4, Direct Supply's failure to notice an appeal deprives this Court of jurisdiction to disturb the District Court's ruling below, which, by any measure, was adverse to Direct Supply.  Accordingly, in the event this Court reverses the District Court's grant of summary judgment in favor of Direct Supply on Count I, which NFP urges should not occur for the reasons set forth above, it should further grant NFP summary affirmance of the District Court's dismissal of Count III.

### 1.    Direct Supply's Failure to Cross-Appeal Entitles NFP to Summary Affirmance of the Breach-of-Contract Claim against It.

Referring the Summary Affirmance Motion to this merits panel with respect to Direct Supply's breach-of-contract claim against NFP, the Court stated that "[t]he merits of the parties' positions are not so clear as to warrant summary action," citing *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam).  In *Taxpayers Watchdog*, this Court observed that "[t]o summarily affirm an order of the district court, this court must conclude that no benefit will be gained from further briefing and argument of the issues presented." *Id.* at 297-98.  Although the Court observed in *Taxpayers Watchdog* that the "party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified," *id.* at 297, the Court in fact granted the requested summary affirmance in that case.

39

Here, there is no dispute that the District Court, in its July 2012 Opinion and Order, dismissed Direct Supply's breach-of-contract claim against NFP (Count III) on the merits.  Specifically, the District Court held that "Direct Supply 'can prove no set of facts in support of their [breach-of-contract] claim [against NFP] which would entitle them to relief.'"  *Direct Supply I*, 878 F. Supp. 2d at 22 (internal citation omitted) (alterations in original).  Nor is there any dispute that, despite this plainly adverse ruling, Direct Supply has not filed a timely (or any) notice of appeal.   Direct Supply's failure to notice an appeal deprives this Court of jurisdiction to consider the merits of the District Court's dismissal of the breach-of-contract claim against NFP.[9]  *See Torres*, 487 U.S. at 315 (holding that requirements of Fed. R. App. P. 4 are mandatory and jurisdictional); *see also Bowles,* 551 U.S. at 209 n.2 (noting that "it is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century").  In the absence of jurisdiction to reach the merits of the breach-of-contract claim against NFP, the District Court's holding may not be

---

[9] In most cases, Fed. R. App. P. 4(a)(1)(A) sets the time in which a notice of appeal may be filed as "within 30 days after entry of the judgment or order appealed from."  It is undisputed that Direct Supply did not file a notice of appeal within the thirty-day period following entry of the Judgment on March 27, 2013.  Fed. R. App. P. 4(a)(3) further provides: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."  Again, Direct Supply did not file a notice of appeal within the fourteen days following Appellants' filing of their Notice of Appeal on April 25, 2013.

disturbed and NFP is entitled to summary affirmance of the dismissal of that count (Count III) of Direct Supply's complaint.

It should be noted that although Direct Supply prevailed on Count I of its Complaint and was awarded all of its requested relief as against Appellants, that fact does not excuse Direct Supply from the requirement that it file a notice of appeal to preserve its breach-of-contract claim against NFP in the event its grant of summary judgment against Appellants is reversed by this Court. *See Tallman v. Udall*, 324 F.2d 411, 418 (D.C. Cir. 1963) (McGowan, J., joined by Miller, J., concurring), *rev'd on other grounds*, 380 U.S. 1 (1965) ("It may seem anomalous at first blush that a successful litigant in the lower court should be under any necessity whatsoever of appealing from the decree which brought him victory. But the judgment may, as here, be comprised of several elements, adverse as well as favorable. If the prevailing party wishes to rely on appeal on a contention decided against him, he must preserve his rights by appeal. This can be by a cross-appeal if time permits after his opponent has appealed, or it may be by a timely notice of appeal which can be dismissed if the other party elects not to pursue the litigation further. In the absence of such a preservation of the point, the successful litigant must be taken to have regarded the grounds upon which he won as so strong that he is content to rely upon them alone in the appellate proceedings."). Rather, Count III is extinguished by operation of the District Court's final Judgment and

41

Direct Supply's failure to notice an appeal from it. *See Associated Third Class Mail Users v. United States Postal Serv.*, 662 F.2d 767, 770 (D.C. Cir. 1980) ("It is well-settled that on an adversary's appeal a party may not challenge or seek to enlarge a judgment to which he did not himself object."); *Swofford v. Int'l Mercantile Marine Co.*, 113 F.2d 179, 182 (D.C. Cir. 1940) ("Moreover, a reversal in an appellate court redounds to the benefit of only those who have appealed. As to other parties the original judgment is valid and enforceable.") Because the merits of NFP's position as to Count III "are so clear that expedited action is justified," *Taxpayers Watchdog*, 819 F.2d at 297, NFP is entitled to summary affirmance of the dismissal of Count III in the event this Court reverses as to the grant of summary judgment on Count I.[10]

> ## 2. In Any Event, the District Court Correctly Held That NFP Is Entitled to Dismissal of Direct Supply's Breach-of-Contract Claim against It.

Even if this Court were to reach the merits of the District Court's dismissal of Direct Supply's breach-of-contract claim in its July 2012 Opinion and Order, the District Court's conclusion that NFP did not assume the liabilities of Appellants upon the conveyance of Appellants' assets to NFP was correct as a matter of law

---

[10] In the event this Court <u>affirms</u> the Judgment and its grant of summary judgment as to Count I, as NFP urges is justified for the reasons set forth herein, it is unnecessary for the Court to consider whether to grant summary affirmance of the District Court's dismissal of Count III, as no further action by the District Court would be warranted under those circumstances.

and the dismissal of Count III should be affirmed.  To date, two United States District Court judges and two District of Columbia Superior Court judges in five separate cases (including the July 2012 Opinion and Order by the District Court in this case), have reached the same legal conclusion.[11]  All four judges, including Chief Judge Richard W. Roberts in the *Sodexo* federal district court case, separately and comprehensively analyzed the same asset transfer at issue here under the controlling precedent of *Bingham v. Goldberg, Marchesano, Kohlman, Inc.,* 637 A.2d 81 (D.C. 1994).[12]  And all four judges correctly concluded that none of the four *Bingham* exceptions applies to the transfer of assets from the privately-owned, for-profit SHA to the government-created NFP – a transfer made not by a

---

[11] *See MedAssets v. Capitol Med. Center*, Case No. 2010 CA 005679 C, Superior Court for the District of Columbia, Judge Joseph E. Beshouri, Order dated April 5, 2012 (Joint Appendix at A0322-27); *Greater Southeast Cmty. Emergency Physicians, LLC v. Capitol Med. Center, LLC t/a Greater Southeast  Cmty. Hosp.,* Case No. 2011 CA 00712 C, Superior Court for the District of Columbia, Judge Joseph E. Beshouri, Order dated November 15, 2011  (Joint Appendix at A300-17); *Sodexo Operations, LLC v. Capitol Med. Ctr.*, Case No. 2010 CA 002467, D.C. Super. Feb. 11, 2011 Order Denying Motion For Substitution, Judge Erik P. Christian (Joint Appendix at A0092-98); *see also Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234 (D.D.C. 2013); *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC,* 878 F. Supp. 2d 13 (D.D.C. 2012) (July 2012 Opinion and Order at Joint Appendix at A0334-339).

[12] In *Bingham*, the court identified four exceptions to the general rule that a business entity that acquires the assets of another business is not liable for its predecessor's liabilities and debts: "(1) the buyer expressly or impliedly agrees to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a 'mere continuation' of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts."  *Bingham*, 637 A.2d at 89-90 (internal quotation and citation omitted).

consented sale but as a result of a foreclosure, Mayoral Order and emergency legislation passed by the Council of the District of Columbia.  The conclusion is all the more compelling here given that SHA contracted for, received and began using the hospital equipment at issue well over one year before NFP even came into existence and, even after NFP came into existence, "Specialty Hospitals continued to acknowledge its liability for payment . . . and even made a payment towards the balance on July 30, 2010."  (Joint Appendix at A0331.)

In concluding that Direct Supply could not maintain its breach-of-contract claim against NFP, the District Court held in its July 2012 Opinion and Order that SHA's "liabilities did not—by operation of D.C. common law—pass to NFP when Mayoral Order 10–117 conveyed Specialty Hospitals's assets."  (Joint Appendix at A0335.)  In so holding, the District Court explained that while there are exceptions to the "general rule . . . that when a business entity acquires the assets of another business, the successor is not liable for the predecessor's debts or liabilities, . . . Direct Supply does not even argue that any of these exceptions apply, much less set forth facts in its complaint that, if true, might establish NFP's contractual liability under any of these exceptions to the general rule."  (Joint Appendix at A0336).

After recognizing that Direct Supply failed to argue the point, the District Court nonetheless undertook its own analysis in which it explained why none of

the four *Bingham* exceptions applies to NFP.  With respect to the first *Bingham*

exception - whether NFP expressly or impliedly agreed to assume the Contract -

the District Court stated:

> First, the mayoral order did not transfer Specialty Hospitals's contractual debt to NFP. Expressly, the order transferred only the "obligations transferred to the District of Columbia under the [July 9, 2010,] Substitute Trustee's Deed."  The Substitute Trustee's Deed describes the transferred property and does not include any of Specialty Hospitals's contractual debts.
>
> Nor does the complaint suggest that NFP impliedly accepted Specialty Hospitals's debts when it received the assets transferred by Mayoral Order 10–117. . . .  As Direct Supply acknowledges, NFP has never admitted liability for Specialty Hospitals's debts.  Instead, Specialty Hospitals admitted that it was liable for those debts.  And, Direct Supply admits that it was Specialty Hospitals's admission of liability—not any representation by NFP—that Direct Supply had relied on when it decided against attempting to collect payment from the District of Columbia.  Direct Supply's complaint does not suggest that NFP impliedly assumed Specialty Hospitals's contractual debts.

(Joint Appendix at A0336-37)  (internal quotations and citations omitted).

     With respect to the second or "de facto" merger *Bingham* exception, the

District Court stated:

> Second, Direct Supply has not alleged a de facto merger of the Specialty Hospitals and NFP. They remain separate entities, and the de-facto-merger exception generally requires that the two entities—the predecessor entity and the acquiring entity—be essentially the same. . . . Specialty Hospitals continues to exist separate and apart from NFP. And the complaint makes no allegations suggesting any affiliation between Specialty Hospitals and NFP.

(Joint Appendix at A0337) (internal quotations and citations omitted).

With respect to the third *Bingham* exception, the "mere continuation" exception, the District Court stated:

> Nor has Direct Supply alleged that NFP is a "mere continuation" of Specialty Hospitals. An acquiring entity is a mere continuation of its predecessor when "there is a continuation of the corporate entity of the seller"—it's not enough that "there is a continuation of the seller's business operation." *Bingham,* 637 A.2d at 92 (quoting *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir.1985)). Specialty Hospitals did not sell United Medical Center to NFP; the District of Columbia took the hospital from Specialty Hospitals and gave it to NFP. Specialty Hospitals's corporate identity has not continued as NFP; it was a complete change of ownership, and Specialty Hospitals has *challenged* the takeover. Additionally, Specialty Hospitals is a privately owned corporation, while NFP is a government-created, non-profit corporation. NFP and Specialty Hospitals remain separate; NFP is not a corporate continuation of Specialty Hospitals, and Direct Supply does not allege otherwise.

(Joint Appendix at A0338) (internal quotations and citations omitted).

The District Court also correctly determined that Direct Supply could not satisfy the fourth *Bingham* exception, the exception for "fraudulent transfers." *Id.* The District Court stated:

> Finally, Direct Supply does not allege that Specialty Hospitals was trying to escape its debts by virtue of a fraudulent transfer. As Direct Supply's complaint acknowledges, "Specialty Hospitals challenged the District of Columbia's takeover of [United Medical Center] and NFP's assumption of control over the facility." Instead, the takeover was the District's response to Specialty Hospitals's breach of its agreement with the District.

> Accordingly, Direct Supply "can prove no set of facts in support of their [breach-of-contract] claim [against NFP] which would entitle them to relief," and the Court dismisses Count III of the complaint.

46

(Joint Appendix at A0338-39) (internal quotations and citations omitted).

NFP respectfully submits that the foregoing demonstrates that the District Court's dismissal of Direct Supply's breach-of-contract claim against NFP was thorough, well-reasoned, and correct as a matter of law. In addition, as discussed above, the result reached by the District Court was consistent with the decisions of each and every court to have addressed this precise issue. Thus, although the District Court's dismissal of Count III should not be at issue in this appeal, should this Court reach or otherwise consider the merits of that aspect of the July 2012 Opinion and Order, NFP respectfully submits that it should be summarily affirmed.

## **CONCLUSION**

For the foregoing reasons, NFP requests that the Court affirm the District Court's grant of summary judgment against Appellants and take no further action. In the event the Court reverses the District Court, NFP requests that the Court summarily affirm the District Court's entry of summary judgment in favor of NFP on Direct Supply's breach-of-contract claim (Count III), which the Court lacks jurisdiction to consider on the merits and is not properly the subject of this appeal. Should the Court proceed to reach the merits of the District Court's dismissal of Count III, NFP requests that the dismissal be summarily affirmed.

Dated: February 28, 2014                    Respectfully submitted,


                                            /s/Emil Hirsch
                                            Emil Hirsch (D.C. Cir. Bar #27225)

                                            /s/Steven A. Pozefsky
                                            Steven A. Pozefsky (D.C. Cir. Bar #52345)
                                            Bradley Arant Boult Cummings LLP
                                            1615 L Street, NW, Suite 1350
                                            Washington, D.C. 20036
                                            Telephone: (202) 393-7150
                                            Facsimile: (202) 347-1694
                                            Email: ehirsch@babc.com
                                            spozefsky@babc.com
                                            *Attorneys for Defendant-Appellee*
                                            *Not-For-Profit Hospital Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th[th] day of February 2014, a copy of the foregoing was served via this Court's electronic filing system on the following:

Douglas S. Crosno, Esquire
HOGAN LOVELLS
555 13th Street, NW
Washington, DC 20004
(202) 637-6885
Fax: (202) 637-5910
Email: dscrosno@hhlaw.com
*Attorneys for Plaintiff-Appellee Direct Supply, Inc.*

Kenneth Hanson Rosenau, Esquire
ROSENAU & ROSENAU
1304 Rhode Island Avenue, NW
Washington, DC 20005
(202) 387-8680
Fax: (202) 387-8682
Email: kenneth.rosenau@rosenaulaw.com
*Attorneys for Defendants-Appellants Specialty Hospitals of America, LLC*
*and Specialty Hospitals of Washington, LLC*

/s/Emil Hirsch
Emil Hirsch (D.C. Cir. Bar # 27225)
Steven A. Pozefsky (D.C. Cir. Bar #52345)
Bradley Arant Boult Cummings LLP
1615 L Street, NW
Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
Facsimile: (202) 347-1694
Email: ehirsch@babc.com
spozefsky@babc.com
*Attorneys for Defendant-Appellee*
*Not-For-Profit Hospital Corporation*

49

## <u>CERTIFICATE REGARDING WORD COUNT</u>

I HEREBY CERTIFY that the word count for Defendant-Appellee Not-For-Profit Hospital Corporation's Brief, exclusive of the Cover Page, Certificate of Parties, Rulings and Related Cases, Corporate Disclosure Statement, Table of Contents, Table of Authorities, Glossary, Signature Block, and Certificate of Service is fewer than 14,000 words.  The word count is 11,110 words.

/s/ Steven A. Pozefsky
Steven A. Pozefsky
